Pat Lundvall (NSBN 3761)
Daniel Aquino (NSBN 12682)
MCDONALD CARANO LLP
2300 W Sahara Ave, Suite 1200
Las Vegas, NV 89102
Tel. (702) 873-4100
Email: plundvall@mcdonaldcarano.com
Email: daquino@mcdonaldcarano.com

Eleanor Hamburger (WSBA # 26478)
Richard E. Spoonemore (WSBA #21833)
Daniel S. Gross (WSBA #23992)
*Pro Hac Vice Applications Forthcoming*
SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303
Email: ehamburger@sylaw.com
Email: rspoonemore@sylaw.com
Email: dgross@sylaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JULIE KATZ and NEAL KATZ, as parents and guardians of their minor child J.K., individually and on behalf of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH PLAN OF NEVADA, INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br>**(CLASS ACTION)** |

## I.   PARTIES

1.   **J.K.**   Plaintiff J.K. is the seventeen-year-old child and dependent of Julie Katz and Neal Katz. J.K. resides in Las Vegas, in Clark County, Nevada. J.K. is enrolled in an insured health plan administered by Defendant Health Plan of Nevada, Inc. ("HPN") by virtue of his father's employment with All Western Mortgage. J.K. required residential mental health treatment, but some of his medically necessary care was denied by HPN because HPN imposes a

COMPLAINT (CLASS ACTION) – 1

quantitative treatment limit of 100 days per member per calendar year on coverage for residential mental health treatment.

2. **Health Plan of Nevada, Inc.**  Defendant, HPN, is a domestic corporation in the State of Nevada, headquartered in Las Vegas, in Clark County, Nevada.  HPN issued, delivered, and insured the health coverage for J.K.  HPN offers individual and group health plan coverage that includes both medical/surgical benefits and mental health/substance use disorder benefits.  *See* 29 U.S.C. § 1185a; 42 U.S.C. § 300gg-26(a)(3)(A)(ii).  Accordingly, it is subject to the federal Mental Health Parity Act requirements ("Parity Act"). Except where otherwise relevant to distinguish between the two or to refer to other behavioral-related services, mental health services or treatment and substance abuse services or treatment will be referred to herein collectively as "behavioral health disorder services," "behavioral health services," "behavioral health treatment," or other related terms. *See, e.g., Exh. 1*, p. 10 (mental health services referred to as behavioral health treatment), p. 14 (substance-related and addictive disorder services referred to as "behavioral health treatment services.")

## II.  JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

4. Venue is proper in this District under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because, *inter alia,* Defendant HPN resides or may be found in this District, and its principal place of business is in this District.

5. Divisional venue is proper under LR IA 1-8(a) in the Unofficial Southern Division of the District, because that is the Division in which the action arose.

6. In conformity with 29 U.S.C. § 1132(h), Plaintiffs have served this Complaint by certified mail on the Secretary of Labor and the Secretary of Treasury.

## III.  NATURE OF THE CASE

7. On October 3, 2008, Congress passed the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008.  The Parity Act, adopted as an amendment to ERISA, expanded the scope of previous federal legislation promoting access to mental health coverage and was "designed to end discrimination in the provision of coverage for mental health

COMPLAINT (CLASS ACTION) – 2

and substance use disorders, as compared to medical and surgical conditions." *Coalition for Parity v. Sebelius*, 709 F. Supp. 2d 10, 13 (D.D.C. 2010). The Parity Act requires that the exclusions and limitations a health plan imposes on its coverage of mental health services be "no more restrictive" than those applied to substantially all of the plan's medical and surgical benefits. *See* 29 U.S.C. § 1185a(a)(3). The Parity Act was effective as of October 3, 2009, and initially applied to group health plans of 50 or more.

8. The Affordable Care Act ("ACA") expanded the reach of the Parity Act to include small group and individual health insurance coverage. *See* 42 U.S.C. § 300gg-26. Today, if a health insurer offers both mental health and medical/surgical benefits, it must do so consistent with the Parity Act. *Id.*

9. The HPN Plan covers both medical and behavioral health services. Therefore, the HPN Plan must be administered under the Parity Act to ensure parity. Specifically, it requires that:

> [T]he treatment limitations applicable to such mental health or substance abuse disorder benefits are **no more restrictive** than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are **no separate treatment limitations** that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185(a)(3)(A)(ii); 42 U.S.C. § 300gg-26(a)(3)(A)(ii) (emphasis added).

10. The Parity Act divides treatment limitations into two categories: quantitative treatment limitations and non-quantitative treatment limitations. 45 C.F.R. § 146.136(a). Quantitative treatment limitations "are expressed numerically (such as 50 outpatient visits per year), while nonquantitative treatment limitations ("NQTLs") "otherwise limit the scope or duration of benefits for treatment under a plan or coverage." *Id*. To determine whether treatment limitations that a health plan imposes on its coverage of behavioral health services pass muster under the Parity Act., the insurer is first required to divide its health benefits into six classifications: (1) inpatient, in-network, (2) inpatient, out-of-network, (3) outpatient, in-network, (4) outpatient, out-of-network, (5) emergency care, and (6) prescription drugs. 45 C.F.R. § 146.136(c)(3)(i)(A).

11. If an insurer provides coverage for any mental health service in one of these classifications but imposes a quantitative treatment limitation on those benefits, the insurer must

COMPLAINT (CLASS ACTION) – 3

show that the same limitation applies to at least "two-thirds of all medical/surgical benefits in that classification." 45 C.F.R. § 146.136(c)(3)(i)(A). If the same limitation is not applied to two-thirds of medical/surgical benefits in the classification, then the insurer violates the Parity Act. *Id.*

12. HPN covers mental health services under the "Mental Health Services and Severe Mental Illness Services" benefit. *Exh. 1,* p. 10. One of the mental health services covered under this benefit is "Residential Treatment Center (RTC) Services." *Id.* RTC Services are also covered by HPN under the "Substance-Related and Addictive Disorder Services" benefit. *Id.,* p. 14.

13. HPN imposes a quantitative treatment limitation on its coverage of RTC services. Specifically, HPN excludes from coverage any RTC services that exceed "one hundred (100) days per Member per Calendar Year" (the "100-day Exclusion" or the "Exclusion"). *Id.*, p. 21.

14. HPN classifies RTC Services, Skilled Nursing Facility ("SNF") Services, and most Hospital-based services as Inpatient services. *Id.*, p.17. ("Inpatient' means being confined in a Hospital, Skilled Nursing Facility or Residential Treatment Center as a registered bed patient under a Physician's Order.").

15. Many benefits are covered as "inpatient services." *See, e.g., id.*, pp. 6, 18 (Emergency or Urgently Needed Services), pp. 8–9, 19 (Healthcare Facility Services), p.10 (Inpatient Mental Health Services); pp. 11, 20 (Organ Tissue Transplant Surgical Services), pp.12, 19 (Physician Surgical Services), p. 21 (Hospice Care Services), p. 22 (Short Term Rehabilitation Services), p. 23 (Substance-Related and Addictive Disorder Services).  Most of these benefits have no quantitative treatment limitation, although Hospice-related Respite Care services, Short-Term Habilitations Services, and Short-Term Rehabilitation Services have different quantitative treatment limitations than are applicable to RTC and SNF services. *Id.,* pp. 21-22.

16. The only inpatient benefits on which HPN imposes the 100-day exclusion are RTC Services and SNF Services.

17. Facially, and as applied, HPN does not impose the 100-day exclusion on at least two-thirds of all medical/surgical benefits in either Parity Act classification applicable to inpatient care – in-network inpatient services, and out-of-network inpatient services.

18. ERISA requires HPN to administer its health plans in compliance with the Parity

COMPLAINT (CLASS ACTION) – 4

Act. The Parity Act is both part of ERISA and incorporated as additional "terms" to the HPN health insurance plans, modifying and eliminating any literal terms of the plans that are inconsistent with the Parity Act. By failing to comply with the Parity Act *as incorporated into* the terms of the HPN health insurance plans, HPN has systematically and uniformly failed to properly process claims and administer benefits. Additionally, HPN has misinformed J.K. and all proposed class members about their rights to Residential Treatment Center service coverage under the Plan and the Parity Act.

19. By imposing the 100-day Exclusion on RTC benefits in violation of the Parity Act and its regulations, HPN has systemically and uniformly breached its ERISA obligations, including its fiduciary duties to Plaintiff J.K. and other individuals enrolled in group health plans insured or administered by HPN.

20. Plaintiff J.K., on behalf of himself and the proposed class, seeks remedies under ERISA stemming from HPN's imposition of the 100-day Exclusion in health plans governed by the Parity Act. These remedies include but are not limited to: (1) an order declaring that the 100-day Exclusion violates the Parity Act and is therefore void and unenforceable; (2) an order directing HPN to process and reprocess claims for RTC benefits that were or would have been denied as a result of the HPN's 100-day Exclusion, and to require equitable tolling of related deadlines; and (3) other equitable remedies related to HPN's breaches of fiduciary duty including, but not limited to unjust enrichment, disgorgement, restitution, and surcharge.

## IV.  CLASS ALLEGATIONS

21. ***Definition of Class.*** J.K. proposes certification of the following class:

All individuals who:

1) have been, are, or will be participants or beneficiaries in an ERISA "group health plan" (as defined in 29 U.S.C. § 1167(1)) that was insured or administered by Health Plan of Nevada, Inc., at any time on or after December 6, 2015;

2) in which the group health plan excludes or excluded coverage of Residential Treatment Center service in excess of 100 days per calendar year, per participant or beneficiary; and

COMPLAINT (CLASS ACTION) – 5

3) while enrolled in such group health plan(s), have required, require, or are expected to require more than 100 days of Residential Treatment Center services in a calendar year.

22. **Size of Class.** Based on information and belief, the members of the class defined above are so numerous that joinder of all members is impractical. The number of class members enrolled in the HPN Plan, is expected to number significantly more than 40 persons. Classes this size are sufficiently large that joinder of all members is impracticable.

23. **Class Representative.** Named plaintiff J.K. was a beneficiary in the HPN Plan who has required mental health treatment at a Residential Treatment Center. He was enrolled in an insured health plan governed by ERISA. He was denied coverage of his medically necessary Residential Treatment Center services due to HPN's application of the 100-day Exclusion, causing him to incur substantial out-of-pocket expenses. His claims are typical of the other members of the class and J.K. will fairly and adequately represent the interests of the class.

24. **Common Questions of Law and Fact.** This action requires a determination of whether HPN's imposition of the 100-day Exclusion violates the Parity Act and therefore violates ERISA. Adjudication of this issue will in turn determine whether HPN, as a fiduciary, breached its fiduciary duties to J.K. and the Class.

25. **Separate Suits Would Create Risk of Varying Conduct Requirements.** The prosecution of separate actions by class members against HPN would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(1).

26. **HPN Has Acted on Grounds Generally Applicable to the Class.** By imposing the exclusion of coverage of Residential Treatment Center (mental health) services in excess of 100 days per member per calendar year, Defendant HPN has acted on grounds generally applicable to the relevant class, rendering declaratory relief appropriate respecting the entire class for the particular claim. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(2).

27. **Questions of Law and Fact Common to the Class Predominate Over Individual Issues.** The claims of individual class members are more efficiently adjudicated on a class-wide

COMPLAINT (CLASS ACTION) – 6

basis. Any interest that individual members have in individually controlling the prosecution of separate actions is outweighed by the efficiency, in time and cost, of the class mechanism. Upon information and belief, no class action suit has been filed against HPN for the relief requested in this action for the same or similar class. Issues as to HPN's conduct in applying standard contract provisions towards all class members predominate over any questions unique to members of the class. Certification is therefore also proper under Federal Rule of Civil Procedure 23(b)(3).

28. ***Venue***.  This class will be most efficiently prosecuted in the District of Nevada, where HPN's principal place of business is located and where J.K., Julie Katz and Neal Katz reside.

29. ***Class Counsel***. J.K. has retained experienced and competent class counsel.

## V.  FACTUAL BACKGROUND

30. During all relevant time periods on and after December 1, 2019 J.K. has been enrolled in an insured health plan through HPN.

31. J.K. is and has been diagnosed with multiple mental health and substance use conditions listed in the most current version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM") and considered "behavioral health" conditions by HPN. *Exh. 1*, § 7.24, p. 16.

32. J.K. enrolled in treatment at Daniels Academy, a licensed Residential Treatment Center, to receive behavioral health treatment for his conditions, as of August 26, 2021.

33. HPN covered J.K.'s behavioral health residential treatment at Daniels Academy as medically necessary for his first 100 days of enrollment, from August 26, 2021–December 3, 2021.

### SERVICES DENIED FOR DATES OF SERVICE
### DECEMBER 4–DECEMBER 31, 2021

34. In a letter dated December 6, 2021, HPN denied coverage of J.K.'s continued treatment at Daniels Academy for the period of "12/04/2021 and forward." *Exh. 2,* p. 25.

35. As a practical matter, this first denial was imposed from December 4, 2021–December 31, 2021.  Beginning on January 1, 2022, HPN provided J.K. with coverage at Daniels Academy for an additional 100 days.

36. The sole reason for the first denial was HPN's imposition of the 100-day Exclusion. Specifically, the denial letter stated: "According to the Health Plan of Nevada (HPN) Group Plans

COMPLAINT (CLASS ACTION) – 7

Attachment A Benefit Schedule, you have exhausted the 100-day calendar year maximum residential treatment benefit." *Id.*

37. J.K.'s parents appealed, and HPN denied the appeal. *Exh. 3*, p. 27. The sole reason given for the denial was the 100-day exclusion, although this time the uncovered period was listed as beginning December **5th** of 2021, not December **4th** of 2021, as had been listed in the prior denial. *Id.*, pp. 27–30.

38. J.K.'s parents requested a second level appeal of the denial of authorization for RTC services provided at Daniels Academy for the period from December 5 through December 31, 2021. *Exh. 4*, p.33.

39. In a letter dated 7/7/2022 addressed to J.K., HPN provided notice that it denied the 2nd Level Formal Appeal of the denial of coverage for RTC services provided from December 5, 2021 through December 31, 2021. *Exh. 5*, p. 35. Again, the sole reason given for the denial was the 100-day exclusion. *Id.,* pp. 35-38.

### SERVICES DENIED FOR APRIL 11, 2022 AND FORWARD

40. J.K. continued to receive Residential Treatment Center services at Daniels Academy into 2022.

41. Because it was a new calendar year and J.K.'s treatment remained medically necessary, HPN covered J.K.'s RTC services for the first 100 days of 2022.

42. In a letter dated June 20, 2022, HPN provided notice of their denial of authorization for "Residential Treatment Center Days; 04/11/2022 and forward." *Exh. 6,* pp.42-43.

43. J.K.'s parents appealed this second denial and HPN denied the appeal. The only reason given for the denial of the RTC service claims was the 100-day exclusion. *Exh. 7,* pp.45-46.

44. J.K.'s parents submitted a second-level appeal, which was also denied. *Exh. 8,* pp. 54 (p. 44). The only reason given for the continued denial of RTC service coverage was the 100-day exclusion. *Id.*

45. In a letter to Plaintiff J.K. dated June 1, 2023, HPN explained its reasoning for concluding that the 100-day exclusion assertedly did not violate the Parity Act, noting that "[t]here

COMPLAINT (CLASS ACTION) – 8

are various limitations on medical services, including limitations similar to Residential treatment." *Exh. 9,* p.60. HPN then cited the visit limitations it imposes on SNF and Respite Services benefits. *Id.*

46. Rather than support the 100-day exclusion's lawfulness, HPN's explanation affirmatively demonstrates at least two ways in which HPN violated the Parity Act when it imposed the 100-day exclusion on RTC services.

47. First, HPN failed to conduct the necessary analysis to determine if a quantitative treatment limitation on a behavioral health service was applied to two-thirds of the covered medical/surgical services in the parallel service category. In particular, HPN failed to determine that the 100-day exclusion (a quantitative treatment limitation imposed on a behavioral health service – RTCs) was also imposed on two-thirds of the covered medical/surgical services in the same category as RTC services, in this case, in-network inpatient services, or out-of-network inpatient services. *See* 45 C.F.R. § 146.136(c)(3)(i)(A).

48. Second, the quantitative treatment limitation HPN imposes on Respite Services is different from that imposed by HPN on RTC services. *See, e.g., Exh. 1,* p.21. HPN's imposition of its Respite Services visit limitations thus provides no support for concluding that the RTC 100-day exclusion is lawful under the Parity Act.

49. As a result of HPN's application of the 100-day exclusion to the RTC services that J.K. received at Daniels Academy in 2021 and 2022, J.K. and his parents paid out-of-pocket for Residential Treatment Center behavioral health services that would have been covered, but for HPN's application of the 100-day exclusion, an illegal quantitative treatment limitation on J.K.'s claims for behavioral health service coverage.

50. In light of the HPN plan, written statements, and representations by HPN to J.K. and other members of the proposed class, any attempt by proposed class members to pursue administrative remedies is futile. Nonetheless, J.K. completed the internal appeals process within HPN *twice* to no avail. J.K. has exhausted his administrative remedies.

# VI.  CLAIMS FOR RELIEF

**FIRST CLAIM:**
**BREACH OF FIDUCIARY DUTIES**
**ERISA §§ 404(A)(1), 502(A)(2), 29 U.S.C. §§ 1104(A)(1), 1132(A)(2)**

51. Plaintiffs re-allege all paragraphs above.

52. HPN is, and at all relevant times was, a plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or discretionary control with respect to the denial and appeal of denied claims under the plans it insures and/or administers.

53. ERISA imposes strict fiduciary duties upon plan fiduciaries. ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C), states, in relevant part, that a plan fiduciary must discharge its duties with respect to a plan "solely in the interest of the participants and beneficiaries and … in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV."

54. ERISA § 409(a), 29 U.S.C. § 1109(a), states, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the Plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the Plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

55. The terms of an ERISA plan include provisions of substantive federal law, such as the requirements of the Parity Act. HPN has failed to comply with the terms of the Plan, as modified by the requirements of the Parity Act.

56. HPN violated its obligations under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), by failing to act in accordance with the documents and instruments governing the Plans, including the Parity Act, and breached its fiduciary duties to J.K. and the class.

57. As a direct and proximate result of these acts and omissions, J.K. and all class members have been injured and suffered losses, and they are entitled to equitable relief under ERISA against HPN. Such equitable relief includes injunction, reformation, surcharge, processing

COMPLAINT (CLASS ACTION) – 10

and reprocessing of wrongfully denied or excluded Residential Treatment Center services, and equitable tolling of claim and appeal deadlines for requesting authorization or coverage of such services and appealing denials of such authorizations or coverage requests, and any applicable statute of limitations.

### SECOND CLAIM:
### CLAIM FOR RECOVERY OF BENEFITS, CLARIFICATION OF RIGHTS UNDER THE TERMS OF THE HPN PLAN
### ERISA § 502(A)(1)(B), 29 U.S.C. § 1132(A)(1)(B)

58. Plaintiffs re-allege all paragraphs above.

59. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a participant or beneficiary may bring an action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

60. J.K. and the class are entitled to clarification and a declaration of rights to coverage of Residential Treatment Center services without the imposition of the 100-day exclusion.

61. J.K. and the class are entitled to payment of benefits wrongfully denied as a result of HPN's failure to comply with the terms of its Plans, as modified by the requirements of the Parity Act.

62. J.K. and the class also seek equitable relief to recover benefits due them, in the form of a retrospective injunction requiring HPN to reprocess J.K.'s and class members' claims for Residential Treatment Center services in excess of 100 days in a calendar year and to process claims for such services incurred by class members during the class period, as well as equitable tolling of claim and appeal deadlines for requesting authorization or coverage of such services and appealing denials of such authorizations or coverage requests, and any applicable statute of limitations.

### THIRD CLAIM:
### CLAIM TO OBTAIN OTHER EQUITABLE RELIEF AND TO ENFORCE THE TERMS OF THE PLANS
### ERISA § 502(A)(3), 29 U.S.C. § 1132(A)(3)

63. Plaintiffs re-allege all paragraphs above.

64. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a participant or beneficiary may "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." J.K. and the class seek to have HPN provide the class with corrective notice, reformation of the relevant Plan documents, and processing or reprocessing of all claims for greater than 100 days of Residential Treatment Center services incurred by class members in a calendar year during the class period.

65. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), further provides that a participant or beneficiary may obtain other appropriate equitable relief to redress violations of ERISA or enforce plan terms. To the extent full relief is not available under ERISA § 502(a)(1)(b), 29 U.S.C. § 1132(a)(1)(B) or ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), then J.K. and the class seek equitable remedies including, without limitation, unjust enrichment, disgorgement, restitution, estoppel, and surcharge arising out of the failure to administer the terms of the Plans as modified by the Parity Act and implementing regulations.

## VII. REQUEST FOR RELIEF

66. WHEREFORE, J.K. requests that this Court:

(a) Certify this case as a class action with the class defined as indicated in § IV above, designate named Plaintiff J.K., by and through his parents Julie Katz and Neal Katz as class representatives; and designate SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC, Daniel Gross, Eleanor Hamburger, and Richard Spoonemore as class counsel;

(b) Declare that Defendant HPN may not apply contract provisions, policies, or practices that impose quantitative treatment day limitations on Residential Treatment Center Services to treat behavioral health conditions that limit such coverage to 100 days of services per Member per calendar year when no such quantitative treatment day limitations are applied to substantially all in-network or out of network inpatient medical and surgical services;

(c) Declare that HPN's 100-day Exclusion, a quantitative treatment limitation on behavioral health Residential Treatment Center services, as found in the Plan, is void and unenforceable;

(d) Enter judgment on behalf of the HPN Plan, J.K., and the proposed Class for injury to the integrity of the Plan and/or losses sustained by such Plan due to Defendant's breaches of fiduciary duty and failure to pay plan benefits;

(e) Enter judgment in favor of J.K. and the Class for an amount to be proven at trial due to Defendants' failure to provide benefits due under the Plans as modified by the Parity Act, and/or order remand and reprocessing of all wrongfully denied claims under the 100-day Exclusion;

(f) Award Plaintiffs and the Class their attorney fees and costs under ERISA §502(g), 29 U.S.C. § 1132(g); and

(g) Award such other relief as the court deems just and equitable.

Dated this 5th day of October 2023.

MCDONALD CARANO LLP

 /s/ Daniel I. Aquino
Pat Lundvall (NSBN 3761)
Daniel I. Aquino (NSBN 12682)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102

Daniel S. Gross (WSBA #23992)
Eleanor Hamburger (WSBA #26478)
Richard E. Spoonemore (WSBA #21833)
*Pro Hac Vice Applications Forthcoming*
SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 Western Avenue, Suite 350
Seattle, WA 98121

*Attorneys for Plaintiffs*

**INDEX OF EXHIBITS**

| Exhibit | Description | Bates No. |
|---|---|---|
| 1 | Excerpts of HPN Plan Benefit Information | 001-023 |
| 2 | HPN Denial of Authorization Request for 12.2021, dated 12.06.2021 | 024-025 |
| 3 | HPN Denial of 1st Appeal for 12.2021, dated 05.25.2022 | 026-031 |
| 4 | Request for 2nd Appeal for 12.2021, dated 06.06.2022 | 032-033 |
| 5 | HPN Denial of 2nd Appeal for 12.2021, dated 07.07.2022 | 034-040 |
| 6 | HPN Denial of Authorization Request for 4.2022 forward, dated 06.20.2022 | 041-043 |
| 7 | HPN Denial of 1st Appeal for 4.2022 forward, dated 07.28.2022 | 044-052 |
| 8 | HPN Denial of 2nd Appeal for 4.2022 forward, dated 09.23.2022 | 053-058 |
| 9 | HPN Response to ERISA File Request, dated 06.01.2023 | 059-060 |